We'll hear argument first this morning in Case No. 15-537, Bravo-Fernandez v. Martinez-Maldonado v. United States. Ms. Black. Thank you, Mr. Chief Justice, and may it please the Court. For three reasons, acquittals should have full effect under the Double Jeopardy Clause without regard to invalid vacated convictions. First, vacated convictions are legal nullities, including under the Double Jeopardy Clause. Second, vacated convictions are not relevant to what a jury necessarily decided. And third, the government should bear the consequences when overlapping charges produce split verdicts of acquittals and invalid convictions. I take it from that, you would agree that there might be cases where under Ash v. Swenson there's an acquittal on one count, conviction on the other count, conviction set aside, government can retry the count that had been set aside on the ground that under Ash v. Swenson, the verdict on the other count was just irrelevant. That's right. So we always the defendant always has to meet the burden of just showing that the acquittal necessarily decided a fact that the government wants to prove in a subsequent prosecution. In this case, could it be argued, was the argument before the jury on the conspiracy and the travel counts closely intertwined with 666 so that you can't say the jury decided most likely on some issue that's irrelevant to 666? Right. The only issue, the only issue that was in dispute was whether there was a bribe. There's no dispute that to get to Las Vegas from Puerto Rico, you have to travel. There was no dispute that they agreed to go to a boxing match together. So the only dispute at all was whether there was a bribe. And so when the jury acquitted on conspiracy and travel to commit Program Section 666 bribery, they necessarily decided there was no bribery. Now, the court of appeals did not hold that. It was just Petitioner's argument throughout the case, a point that the government just never disputed, a point that the government never disputed in its brief in opposition, and a point that the government never disputed in its brief on the merits. Ginsburg. But if we're trying to figure out what this jury found, you know, we're not talking about claim preclusion. Claim preclusion, there can never be a new trial on the travel or the conspiracy. But we're talking about issue preclusion. And this jury, we don't know what it decided because of the inconsistency. It said yes to bribery on one, no to bribery on the other. It might have just decided that conviction of the predicate offense, the bribery, was enough and that the government had laid it on too strong by adding the conspiracy and the travel count. How do we know that that's not what the jury decided? Well, we know just looking at the acquittals alone that we know what they decided. So the question is, and it's, I think, under Gager and under the Double Jeopardy Clause, is this Court for the first time in the history of its jurisprudence going to give any meaning to or relevance to an invalid conviction? You have never held an invalid conviction was relevant to or evidence of anything, Justice Ginsburg. And let me just suggest the last place that you should start is the Double Jeopardy Clause, where illegal, invalid, vacated convictions have always been legal nullities. Ms. Blatt, it does seem to me that that's what your argument rests on in the end, the idea that we shouldn't give any weight or any influence to an invalid conviction. Is that a Double Jeopardy principle, or does it come from someplace else? Both. So we have our main, I would call it our legal argument, is just that vacated convictions are legal nullities, void ab initio. You pretend that they just don't exist. Yes. But why do we do that? I mean, I take it you have, you know, usually you do pretend that they don't exist. There are not many instances that we can find where we do look to vacated convictions for something or other. But in this case, the vacated conviction surely does tell us something about what the jury did do or what the jury didn't do. It's part of the factual picture. And so the question has to be, well, notwithstanding that, why shouldn't we look at it? Right. And I guess the question, why? Well, so, again, there's the legal argument, which I do want to get back to. But on the factual argument, in Yeager, it was never disputed and it was beyond obvious that a jury that acquits cannot rationally hang. There is a historical fact, and the dissent was all up in arms, that the jury decisions were completely inconsistent and it was at least relevant under 401 that the jury, if it was going to acquit, it could not have hung. And the Court said, I think, three things. But the most, and I think as a factual matter, you don't know what a jury decides when there's an illegal conviction. Just like a hung count, which a jury doesn't decide anything in a hung count. That's what the Court said in Yeager. Kagan. Well, you know, I think you're contesting the premise of my question, because the premise of my question is that this vacated conviction does tell you something about what the jury did. Now, what it tells you is that the jury did inconsistent things, because the vacated conviction tells you that on the one hand, the valid convictions, the jury said that there was not bribery. And on the other hand, the vacated conviction, the jury said that there was bribery. And let's assume for the moment that that's true, that that is exactly what the vacated convictions tell you. They tell you that the jury went in two inconsistent ways. Right. And now you're saying, notwithstanding, that the vacated conviction tells you something about what the jury did or didn't do, about how the jury reasoned. We shouldn't look at it. And there's something very powerful, rhetorically, in your statement. But I guess what I'm trying to figure out, is it anything more than rhetoric? Is there, like, a legal principle here about why we shouldn't look to vacated convictions to tell us something about the facts when they can tell us something about the facts? Sure. Let me prove it to you. I mean, I'm happy to prove it, that the only reason you vacated conviction is because the conviction is a worthless piece of paper and unreliable. And at looking how an error inversely affects acquittals and convictions proves the point. Because whereas errors render the conviction completely worthless and unreliable, an error in the face of an acquittal has the opposite effect of making the acquittal all that more meaningful, reliable, and worthy of respect. I'm not sure that really answers the question, because the vacated conviction may be worthless for a reason that is irrelevant to the point that Justice Kagan was making, which seems to be the situation here. It's a wrongful conviction because an element was missing. But that doesn't undermine the argument that the two verdicts were inconsistent. So the reason why Yeager – I mean, Yeager said – I don't think there's any dispute, and this is the government's whole argument – is Yeager, all that mattered was there was no jury decision. And the only reason why you care about jury decisions – Ginsburg's case was the jury didn't reach any decision. Here, the jury did reach a decision. The decision was vacated because, in the Court's view, the charge was erroneous. By the way, that's not – it's not clear that the charge was erroneous, is it? There's a split on that issue. It's clear as it comes to this Court, but I think, you know, I'd have to go back and read Sun-Diamond, which is whether it's a quid pro quo. Ginsburg's question is, is it only quid pro quo, or is it gratuity as well? As I understand it, there's a circuit split on it. Right. And the government's position is if the Court had directed a verdict and said you must find guilty and the jury both acquit and convict, you still have a piece of relevant information that the jury acted inconsistency – inconsistently. And what I'm trying to say about a jury verdict is that it doesn't count in our legal system unless it's imbued with finality and validity. Sotomayor, it's only true when you can have a set-aside of a verdict that's independent of the jury charge. You can have a situation, like in the State of Michigan, where the conviction was set aside because the defendant was deprived of his right to proceed pro se. There, there's still a complete inconsistency between the acquittal and the conviction. The set-aside had nothing to do with the nature of the charge. Why would you say in that situation we should be ignoring? So I think for errors like Ferretta and Gonzales-Lopez right to counsel and a few other kind of nutty structural errors where the Court has never said they're prejudicial, but we're going to treat it as such because you can't unwind the apple cart. But for all other errors, including a biased judge, absence of counsel, you know, a Brady violation, a directed verdict, a reasonable doubt instruction, they are prejudicial. And when a – Sotomayor, what did they have to do to impeach the inconsistent act of the jury? Okay. So what – exactly what they had to do in Yeager, because in the other reason that Yeager held that hung counts were not relevant is because they were indecipherable. And this part is key. It is because they are indecipherable, the defendant can't be put to the impossible burden of reconciling them with the acquittal, even though they may be reconcilable in ways that don't undermine the acquittal. And vacation – vacated convictions are the same, and let me explain why. The instructional error, because of it, no one knows and no one can know why the jury convicted, and therefore, the defendants should not be put in the impossible burden of explaining that the consistency – that the inconsistency is in on a point that's not relevant to the acquittals. And so here's the example we gave in the brief, is that all 12 jurors – and this is a – this is the point of the error itself causing the inconsistency. All 12 jurors could have thought Petitioners were not guilty of a crime of a quid pro quo exchange. And the only inconsistency, the only inconsistency, is they were divided on whether there was a lawful gratuity. And so in that case, it's completely possible that the verdicts are consistent on the only relevant question. Robertson, I'm sorry, I don't think we don't know. I mean, that's the whole point. I mean, well, exactly, except you have the burden, as I understand it, under the law of carrying the burden of indicating a double jeopardy violation. And if you don't know, you can't carry that burden. So unlike an acquittal, and this is just Yeager all over again. Yeager said we – because you can't ask the jury what transpired in the courtroom, the burden is not on the defendant to reconcile it. You know when you have a final and valid jury verdict, Mr. Chief Justice, what the jury found. And that's the only reason that final and valid jury verdicts had ever – have ever counted under our system at all. Without finality – Kennedy, I don't understand why you're saying we don't know why the jury convicted on 666. It's convicted because the evidence was overwhelming. Well, it convicted on 666 on a charge that allowed it to convict based on completely lawful conduct. So if the jury – the evidence could have been overwhelming. I understand. There was an instructional error. But we know why the jury convicted. No. The jury could have – Because under – because under the erroneous instruction, they clearly found the facts of a violation. All of the factual elements the government asserted were found to be true. Under the wrong – under something that's not a crime. If they had charged the jury that if the defendant were wearing glasses, they've committed a crime, and the jury returns a guilty verdict, you shouldn't care. You can't just say, well, it's a guilty verdict. But the jury was operating under the same charge with respect to the compound crimes. So in order to convict, it would have had to find there was neither quid pro quo nor gratuity. That's what it would have had to find, which would be inconsistent with finding So it's actually inverse. To convict, all the jury had to do was find one out of two possibilities. The jury could have convicted either if they found a lawful gratuity or an unlawful bribe. But to acquit, Justice Ginsburg, the jury had to reject and consider all of the government's theories of criminal liability. So you know the acquittals. There's no way to read them other than the jury acquitted Petitioners of a Crime. Ginsburg. What about the question that I asked you before? If we're trying to find out what this jury did, isn't it a reasonable assumption that they convicted on the bribery, for which there was much evidence? They thought that having the compound crimes, the conspiracy and the travel, was just laying it on too thick. So they weren't going to convict on those. Why couldn't that have been? I think the same case in Yeager, where the Court said, look, there's an apparent inconsistency. No one questioned that the verdicts were irreconcilable and that who knows. I thought in Yeager, the Court said there was no conflict because there was no decision. A hung jury doesn't decide anything. Right. This jury, we know, did decide something. We know the jury decided something that is completely irrelevant. We know the jury decided something that the law finds an anathema. We know the jury found that Petitioners may have committed lawful conduct. There is a reason why this Court has never, ever, ever treated an invalid conviction of evidence or relevant to anything. If the Court had directed a verdict of guilty, I would just be astonished if you were saying, well, we know they convicted. We know they found him guilty. Kennedy, under your argument, the trial court could instruct the jury, if you find guilt on 666, and if you find that there was travel, you must find that there was guilt under the travel section as well. Is that what you're saying? Actually, that one, I'm lost on what you're asking. Sorry. Well, you're saying, in answer to Justice Ginsburg's question, that the jury can't make different decisions with multiple counts. So based on your theory, the trial court can instruct the jury, if you find guilt on 666, you must find guilt on the others if you find there was travel. Right. And our position works no matter what kind of error you have. When you have an acquittal ---- But I think that's an improper instruction. It is an improper instruction. And the question is, is if the instruction is prejudicial in a way that renders the decision not final and valid, it can't be any more relevant evidence than the jury's just refusal to find anything. And it's kind of like, I'll give you an example. If I say I need a car and you give me one without any brakes or a steering wheel, it's not that helpful. And here you just have something on its face that's invalid. On its face, it's a worthless piece of paper. It's never been recognized of anything. And I do think, I'll get back to my legal argument, because the factual argument doesn't seem to be moving you. On the legal argument, is the only reason I'm even here, the only reason we're here and that these vacated convictions don't themselves bar retrial under the Double Jeopardy Clause is because this Court has over and over and over called them complete nullities. Well, maybe one way I can figure out the scope of your argument is just to ask, do you think that the government is always unable to use a vacated conviction that is for any purpose, or do you think that the government is unable to use a vacated conviction only for double jeopardy purposes? The — this Court has never used a vacated conviction for any purpose, period. Yes. So you have the history on your side, most of it. Do you think that that's because the government, you know, cannot use a vacated conviction for any purpose? Yes. I mean, since Blackstone in the 1600s, it was — when it's void ab initio, it disappears. So this isn't a double jeopardy argument. This is a something else argument. Two. But what is it? What is the something else? Why can't the government use a vacated conviction for any purpose? Well, I mean, we have — we have it's void ab initio, and then it's void ab initio under the Double Jeopardy Clause. Well, why — It's just a label. It's void ab initio. But, I mean, it's void in the sense that you can't be punished for a vacated conviction. But the question is, can we use what the vacated conviction tells us about a historical fact, or can we use it for some other purpose that, you know, that I'm not thinking about right now? But that's — What part of the Constitution are we looking to, to tell us this? Just because I'm not going to let Yeager go like this. I mean, there's a historical fact of the hung jury, and the entire government brief and the entire dissent is they're not reconcilable. It's — you just can't ignore reality. And that's why Justice Scalia said you're just — That's not the question I'm asking. Well, except that I'm saying Yeager does defeat what you're saying. But on the void ab initio, there's a reason that invalid convictions are void ab initio. And I don't want to leave the Double Jeopardy Clause, is if they're — the government wants its cake and eat it — eat it, too. It wants to say that they're complete nullities under United States v. Ball. Otherwise, we wouldn't be here. But then all of a sudden, they're not nullities. But I'm sorry, but they're not complete nullities. I'm sorry. Justice Alito. They lack legal effect, but it is a historical fact that it occurs. So surely, they can be used to prove a historical fact. For example, suppose there's a case in which the — in which the question is whether a witness who testified for the prosecution was bribed. Surely, the conviction could be used in that situation, right? I guarantee you if that testimony was struck from the record, it's gone. It disappeared. And here, that's what we're talking about. No, if the conviction — Sotomayor, you're suggesting that if there's a retrial in a vacated conviction, that you can't use the testimony that was elicited during that conviction? That was bribed and the court struck from the record, and they said the government wants to introduce bribed testimony? I don't know of a case that says you can do that. That wasn't, Justice — Oh, maybe I misunderstood the question. Alito's hypothetical is I understood it. His hypothetical is the juror lies — pardon me, the witness lies. Conviction set aside for instructional error. Oh, right. Can't that witness be prosecuted for perjury? Oh, yes. Sorry. Yes, absolutely. Our question is — Oh, so then — Yeah. And then his point that follows is the conviction can be used for some things. You're not using the conviction. You're using the witness's testimony. You can use evidence that's introduced in an invalid conviction for other purposes. The question is, is, are you — the only thing we're talking about is the verdict on its face that's invalid, the same way if you had said you can convict on preponderance of the evidence. It's just the piece of paper that the government's relying on in saying the jury necessarily found guilt. It's not guilt in a way that the law recognizes. But I do think there is something quite unseemly about when the court in Yeager said, if you have the — if hung counts are void and a non-event under the continuing jeopardy principle, they're also void and non-events under Ashe. And here, the government has it, well, they got to count — they at least count for something when it helps us. And it's not only rendering the clause incoherent, but kind of perverse. Well, but the basic point that was made in Yeager over and over again is that when the jury is hung, the jury hasn't done anything. So the defendant in that case was able to carry the burden that the jury hasn't done anything, so we're right back to the typical Ashe case. But this is very, very different. Now, what you're saying, and the way you phrased it is, I think, significant. You said, well, what do we know? We know the jury might have done this. Well, that means you don't know what the jury did. And again, it seems to me that I guess everybody agrees it's the defendant's burden. And it's different than a hung jury. The hung jury, the jury hasn't done anything. When there's a conviction, the jury has done something. They may have done something under erroneous understanding of the law, or they may have done something under the correct understanding of the law. But either way, I don't know that you can put that much reliance on Yeager. I think — I mean, what our argument does depend on is that the reason why the court cares about jury verdicts is because they come with a stamp of finality and validity. And let me look at — let's look at Powell. Powell is a case where you had a valid conviction and a valid acquittal. It was basically apples and apples. And this case is apples and rotten apples. And if you can't use even a valid verdict to impeach another verdict, you sure shouldn't be able to use an invalid verdict either. It's just — that is what Yeager said, that Powell means acquittals can't be undermined by hung counts. Well, they shouldn't be able to be undermined by invalid verdicts either. Ginsburg. Well, the acquittal isn't undermined in that it has claim preclusive effect. Those acquittals are final. They're done. These people can never be prosecuted for the travel offense or — or the conspiracy offense. So it's not — I think you're not right to say that acquittals don't count under the government's jury. Yes, they do count. And that was the very argument made by, you know, the government in Yeager, is who cares about the acquittals because they're going to count. But the Court said no. To really count, you have to have the full effect under Ash. Because there was nothing on the other side in Yeager. If you say a hung jury, a hung, the jury says we can't decide. Right. And I think a rotten apple is worth, then, you know, the orange in Yeager. You basically had an apple and an orange. Here you have something that is infected with reversible error. And just the irony that it has never been countenanced by this Court. But the error had nothing to do with the inconsistency. Yes, it did. Well, it could have. It definitely could have. It could have caused the inconsistency. But it was precisely because we can't know. The defendant could never meet the burden of reconciling the acquittals with the hung counts. And that was what Yeager was saying, is, sure, the defendant has the burden, but we're not going to give them the impossible burden of explaining, well, if the No one could ever reconcile that imponderable. It was a complete inconsistency. And the Court said, yeah, it looks kind of inconsistent, but we're just not really sure what a hung count is. You can't really tell what they did. It could have been an exhaustion. Who knows? And here — Didn't say we're not really sure. It said a hung count is equivalent to no decision at all. And I think an invalid verdict on a legally irrelevant question is worse than no decision at all. Again, the government's position is the jury convicted. Sure, it was a coerced confession. They withheld the crucial confession of the real killer. They didn't have a lawyer. But it's a piece of paper. They unanimously found him guilty. Oh, and there was a preponderance of the evidence instruction, too. But it sure says — it has a lot of meaning to us, because it's evidence of inconsistency. And it's just — and the jury acquits. And you say, oh, well, that's just an acquittal. Okay. Well, they can't retry him. Acquittals — I mean, the acquittal has to mean something under Ashe more than just, you know, the jury. You have to assume that the jury necessarily found him not guilty of the elements. That is the supposition of this case. And — You're saying it is highly doubtful if the government had charged just counts 2 and 3 and got an acquittal, that they could then have had a second trial under 666. You're saying that just couldn't happen under Ashe v. Swenson. That's exactly right. Yes. Yes. Yes. Yes, yes, yes. And the point I'm making about once you have the acquittal is that — and I do think this was going on in Yeager, because the whole point of the government's brief is we get one complete opportunity. Yeah, I know it's a nullity, but let's pretend it's not really a nullity here, but at least we need one complete opportunity. And there were a lot of questions about why should the principles of Ashe outweigh. And the answer was because of sort of the special status acquittals have. They're sacrosanct. The Court has said their unassailability is the most fundamental rule in the history of double jeopardy law, and the primary purpose of the clause is to protect their integrity. And the Court said the fact that you've already gotten acquittal after running the gauntlet and staring down the barrel of the government's gun — and here it was really a firing squad — that should count for something. It should count for barring retrial instead of permitting it. And because acquittals are so special, our position is the government should give you something pretty good if they're going to impeach it. And if the hung count non-decisions weren't good enough in Yeager, it's hard to see how, you know, the rotten, infected apple with a worm should be good enough here. Can I reserve the rest of my time? Roberts. Thank you, counsel. Ms. Prelogar. Mr. Chief Justice, and may it please the Court. The most essential prerequisite for applying collateral estoppel is that the jury must have actually decided an issue in the defendant's favor, and that prerequisite isn't satisfied here. Petitioner's jury returned inconsistent verdicts, convicting them of the standalone bribery offense that they're seeking to preclude relitigation of now, but also acquitting them of offenses involving bribery as a predicate. And it's undisputed that those verdicts cannot be reconciled. They are indisputably inconsistent. Because of that, we know that error occurred and that the jurors must have neglected to follow their instructions with respect to that count. Because of that, this case falls within Powell's recognition that when a jury issues inconsistent verdicts, a defendant can't point to the acquittal and say that that acquittal necessarily resolved any facts in the defendant's favor. Kennedy. Suppose the hypothetical were just conspiracy and travel are charged, and there's an acquittal, could you then try on 666? No, because in that situation, there would be nothing in the record to indicate that the jury had done anything other than follow their instructions, apply a lot of fact, and make factual findings in the defendant's favor. But the situation is different when the jury returns inconsistent verdicts, because there we have conclusive evidence that something went wrong, the jury erred, it wasn't following its instructions. And so when the charges are brought at the same time as they were here, and the jury acts inconsistently, we lack that confidence that the acquittal is actually a reflection of findings in the defendant's favor. Do you agree with Ms. Blatt's statement that the government has never before sought to gain a benefit from a vacated conviction? Well, I think that it's important to separate out the use of the vacated conviction. It's certainly the case that a vacated conviction can't be used to establish the defendant's guilt of that charge. The fact that the conviction is vacated forecloses reliance on the conviction for that purpose. But we're not relying on the conviction for that purpose here. We're looking at it to establish only the jury's inconsistency. That's a historical fact. It's a matter on this historical record that actually occurred. What other purpose could you use a vacated conviction for? Is there anything else that the government can use a vacated conviction for? Or is this the only thing? I think it can use it to establish any kind of historical fact when that's the purpose to which the conviction is being put. And we cite a number of lower court cases that look at vacated convictions to establish things like motive for a subsequent crime or to establish the defendant's plan or intent. So there are situations where it's really the existence of the conviction that tells us something about what actually happened with facts on the ground that I think the conviction is relevant for. Ms. Blatt. Kennedy, could you use it in a civil case? Could a party use it in a civil case to impose a civil liability? Say, well, you know, the jury obviously found that you did this. There was an instruction on the criminal aspect that didn't. But you did this act, and that's collateral estoppel, or it's issue preclusion, in a civil case for damages. No. It wouldn't be appropriate to rely on it there, because as a general civil collateral estoppel principle, the verdict has to be final. And it would lack finality if the conviction had been reversed. But I think that actually points up Petitioner's primary argument here, which is to focus on what the conviction necessarily established. And that's not actually the correct focal point of this inquiry, because we're not the ones trying to rely on the conviction to collaterally stop Petitioners from doing anything. Rather, they're the ones invoking collateral estoppel, and they're relying on the acquittal to do so. So the proper focal point of the inquiry here is, what did that acquittal actually decide? And in light of the inconsistency, we can't know that it resolved any issues in the defendant's favor. Roberts, but you don't know, based on the conviction, you don't know that the verdicts are inconsistent. What you know, just it's the same problem I was raising with your friend on the other side. What you know is they might be. And so it seems to me that what we're being asked to decide, if that possibility that they might be is enough to allow the government to relitigate the substantive count. And it does seem to me that that's a little bit of a extension of what our precedents have said. We do know, though, that these verdicts definitely were inconsistent. It's not just a possibility, because the jury was instructed on the same theories of liability for all of the counts involving Section 666. The First Circuit considered this issue. Roberts, but if the jury relied on the part of the instruction that was legally invalid, then you don't know that they reached a verdict inconsistent with what was the acquittal in the prior case. We can't rule out that. Valid conviction. That's true. We can't rule out that possibility, but it's equally possible that the jury validly convicted on a quid pro quo bribery theory and decided to acquit on the other offenses out of lenity or mistake or confusion. And when we're in this world where we just don't know and Petitioners concede that we can't be certain what either verdict rested on, that in that situation the general collateral estoppel principle is that they cannot preclude that issue from further litigation. Because it's not just whether there's a possibility that the jury resolved issues in their favor. There has to be a certainty that the jury did that. And I think it's actually something notable that it's not at all unusual for acquittals to lack preclusive effect when there's some ambiguity about what the jury had actually decided. Kagan. Ms. Blatt suggested that there's something, I think she used the word unseemly, about using a vacated conviction for this or indeed for any other purpose, given the traditions of our legal system, where it's just very hard to find instances in which we have done so. So, you know, I'm not sure I understand where the unseemliness prohibition comes from, but it does seem, you know, quite out of kilter with the traditions of our legal system to use vacated convictions in a manner that affects individuals' constitutional rights. So I guess tell me why we shouldn't be concerned about that. You shouldn't be concerned about it because the tradition is limited to looking at convictions to stand in for the defendant's guilt. And we acknowledge here that we are we can't rely on the convictions to establish that. Kagan. Well, I think the tradition goes further. I mean, you have a tough time in your brief coming up with any instances, and the only times you do are some a couple of scattered lower court decisions. But you have, other than that, a really tough time coming up with any instances in which courts have used vacated convictions for any purpose. Those lower court examples, though, I think are particularly relevant because what a number of them are doing are using the vacated conviction to answer precisely the question that we have at issue here, which is to try to ascertain the basis for a jury's other verdict. And when the whole question is what did the jury actually necessarily decide, the jury's verdicts are of quite obvious relevance in answering that question. And, in fact, it's also the case that the conviction can be relevant to help the defendant, not just harm the defendant, by actually clarifying the basis of an accompanying verdict that might otherwise be ambiguous. We cite a case that does this, the Velasquez case from the Third Circuit. The way that that situation works is that if a defendant, for example, has defended on multiple theories, let's say it's a conspiracy case and he said there was no agreement and no overact, he won't be able to establish in an acquittal which basis the jury accepted in returning that verdict. But if there's a separate conviction in the case, maybe overlapping with the overt act, even if that conviction is set aside, the defendant could point to it and say, this shows that the jury must have resolved the agreement issue in my favor on that separate verdict of acquittal. So this isn't an argument that the convictions are relevant only when they benefit the government or that we're able to use them to the defendant's disadvantage. It's an argument about the nature of the inquiry. And I think that when you're looking at the question of what that jury necessarily decided, its verdicts are of quite salient relevance in answering that question. Petitioner's primary argument is based on Yeager. Petitioners contend that because there the Court didn't consider the hung count, the same result has to obtain here. But Yeager is fundamentally different because there, there wasn't a jury decision at all through the hung count, and so there wasn't anything that could actually create a true inconsistency with the one verdict in that case that the jurors had returned, the verdict of acquittal. I think Yeager is a manifestation of this Court's longstanding presumption that jurors follow their instructions where they're presumed to act rationally, and Yeager ultimately concluded that the hung count was just too thin of a reed to attribute irrationality to the jury as a whole, because by definition, the jury as a whole in that hung count hadn't done anything. They hadn't agreed on anything. The verdicts are differently situated, as Yeager itself recognized. Yeager distinguished Powell and said that when you have inconsistent verdicts, there the jury has spoken through its verdicts, and if it's reached contradictory results, then what we know is that that inconsistency exists as a matter of the record of the case. And Powell says that in a situation presenting that kind of inconsistency, it wouldn't be appropriate to assume that the verdict of acquittal is the proper verdict, the one that the jury really meant. In fact, Powell said that the most obvious explanation for that kind of inconsistency is that jurors were convinced of guilt and decided to acquit out of lenity. And it would be particularly inappropriate, I think, to accord preclusive effect to that kind of verdict based on lenity, because it would essentially magnify the effects of the jury's nullification and extend it far beyond the compromise the jury itself struck, and in effect, other counts beyond what the jury ever intended. And so I think Powell rightly recognized that when we're in a situation where we can't know that the jury was following its instructions and applying a lot of fact in a rational manner, then the defendant's not able to carry the burden to show that the acquittal is the verdict that the jury truly meant and intended to resolve the factual disputes in the case. I think that we cite a number of examples as well where or it's clear that there are a number of examples where there will be ambiguity in what an acquittal resolved, even separate and apart from any inconsistent verdict. And so Petitioner's suggestion that this fails to accord respect to verdicts, I think, is out of sync with how general preclusion principles operate. Imagine, again, my conspiracy example where the defendant offers two defenses and says there was no agreement and no overt act. In that situation, if the jury acquits and we have a general verdict of acquittal, we won't be able to ascertain the exact argument that the jury adopted. In that situation, we'd know they must have decided something in his favor, but the inability to identify which issue was resolved in the defendant's favor provides a basis to avoid collateral estoppel. And I think this is just a recognition that collateral estoppel is something of an extraordinary remedy here and that we need to be satisfied that its most fundamental prerequisite is satisfied, that something was actually resolved in the defendant's favor. Ginsburg. Do you agree with Petitioner that if you have a jury finding, jury makes a finding, but that finding is infected by race discrimination, you can't use that for anything, even though it's a jury finding? Certainly, you can't use it to establish that the jury found the defendant guilty, because in that situation, that kind of error would establish that the jury wasn't basing that conviction on any relevant circumstance. And to the extent that that error itself resolves an apparent inconsistency in verdicts and establishes that the what seems to be an inconsistency was actually based on the error itself, then, of course, collateral estoppel wouldn't apply, because that would restore our presumption that the jury did act rationally and find facts in reaching its verdict of acquittal. But to the extent that the error doesn't explain the inconsistency, doesn't resolve the verdicts, then we'd still be in a world where, as Powell recognized, we simply can't say that through the verdict of acquittal, the jury necessarily resolved facts in the defendant's favor. Alito, does that position extend to anything that affects the evidence in the case, so that if any prosecution evidence is improperly admitted or any defense evidence is improperly excluded, the same would follow? So long as it creates reversible error, then, of course, the conviction would have to be set aside based on that evidence. But assuming that the evidence applied across the board was that if there was a particular kind of error that resulted in the reversal, then the conviction could not be used to show inconsistency in the verdicts. But I misunderstand your answer. No, I apologize. Let me try to clarify. I was trying to distinguish between those errors that are actually confined to the count of conviction and those errors that would apply across the board to all counts. So if there's a particular error in the case, say an instructional error that only affects the count of conviction, then that might actually resolve the apparent inconsistency. Because if the jury received two different instructions on the overlapping charges, then we might think by looking at the instructions that we can actually clear up the inconsistency that would otherwise exist. So to that extent, that type of error could resolve the inconsistency and provide that the predicate for collateral estoppel is satisfied. But putting aside that class of errors, and we're not in that world here, then I don't think the type of error at all affects the analysis. Because so long as it's disconnected from the inconsistency itself, then it doesn't do anything to clarify what that jury that we know must have disregarded its instructions, what that jury was doing. And I think that there's actually the sole reason that Petitioners say that the Court should disregard the inconsistency here is because of the legal error in this case. But it bears emphasis that they have a remedy for that legal error. The remedy is a new trial. It's the ordinary remedy in this circumstance. And, Justice Ginsburg, in your hypothetical, there, too, the defendant would be entitled to a new trial. But what Petitioners are attempting to do in this case is actually gain complete immunity from further prosecution on these charges. They want to extend the effects of the acquittal on those independent counts to this situation and prevent retrial of the very count that the jury itself convicted them on. And they're not entitled to that much greater remedy unless they can satisfy the prerequisites for collateral estoppel. Kagan. But that is the greater remedy that Yeager gave. And I understand your distinction between Yeager and this case. But it does leave you with a fundamental anomaly, which is in a case in which there's an acquittal and a hung count, the acquittal is the only thing that matters. And in a case where there's an acquittal and a vacated conviction, you know, where a court  and it no longer exists, in that case, the person comes up with a far less good situation. But that result makes sense in light of the way Yeager reasoned through the issue in the case, because in Yeager, you could look to the acquittal and identify that it must have made factual findings to the defendants. Well, it makes sense in terms of part of Yeager's reasoning, but not in terms of other parts of Yeager's reasoning. I mean, another part of Yeager's reasoning just said hung counts have never been accorded respect as a matter of law or history. And similarly, one could say vacated convictions have never been accorded respect as a matter of law or history. They're vacated. They're nullities. You don't get respect for that. I understand that portion of Yeager, though, to just simply confirm what the Court had already said, which is that hung counts are evidence of nothing because they don't represent jury decisions at all. A jury doesn't speak through its – a jury speaks only through its verdict. And so something that signals just disagreement or a failure to agree or even extraneous factors as exhausted results. Kagan when I read Yeager, I see two different rationales. And on one, you're exactly right. There's a real distinction with this case. On the other, it seems you're exactly wrong. There's no distinction in this case at all, because both have never been accorded respect as a matter of law or history. But I think that Yeager itself signaled that the issue on which the case turned is that we didn't have the kind of true inconsistency that existed in a case like Powell. And the finality of the conviction, its validity, doesn't erase the inconsistency that existed in Powell or provide any greater clue about what that jury was actually thinking and what it actually decided through its verdicts. And so I think Yeager itself emphasized that although we do have these finality concerns, a verdict of acquittal is final only with those issues that it actually decided. And Yeager was able to conclude that the jury in that case, through the acquittal, did decide issues in the defendant's favor as opposed to, for example, deciding to acquit out of compassion, exercise lenity, or neglect to follow instructions through the count of acquittal. That's not the case here where we have conclusive evidence. We know for sure this jury didn't follow its instructions, and that brings the case in line with Powell, notwithstanding the fact that the convictions had to be vacated for unrelated reasons. I think it's important to emphasize, too, the weighty interests that land on the side of retrial in this circumstance. That's the ordinary remedy here, and it's for good reason, because when there's a legal error in a trial, that doesn't signal that the government necessarily failed to prove its case, and there's still a strong societal interest in ensuring that the government has an opportunity to enforce the criminal laws against that person, and if it can prove its case under proper instructions, obtain a guilty verdict to punish the criminal misconduct. Alitoso, the question on which we grant a review refers to a vacated, unconstitutional conviction. But is that what we have here? Is this an unconstitutional conviction? I think that we – that the conviction, if it were based on a proper theory, would not be unconstitutional, and so we don't necessarily know. That was the reason why the conviction had to be vacated, was because it wasn't clear what basis the jury had resolved the verdict on. Alitoso, it was an erroneous instruction, so it was an instructional error. Is that a constitutional error? It's a – I think it rises to the level of a constitutional error insofar as the First Circuit held that the defendant's – that the instructional error would have permitted a criminal conviction based on conduct that doesn't constitute a crime. Putting, of course, to one side, as Justice Ginsburg noted, the circuit split on that issue. It's by no means an issue that's been fully resolved. And the majority of circuits have found that the gratuity theory that the jury was instructed on here is a proper interpretation of Section 666. So is every instructional error a constitutional error? I don't think that all of them would necessarily rise to the level of a constitutional error. I guess any error that ultimately is prejudicial and where we can't know for certain whether the defendant was properly convicted based on that charge, I think at the very least would, of course, warrant setting aside the conviction and vacating it. So if there were a harmless error issue in this case, what would the standard be? If there were a harmless issue in this … It would have to be harmless beyond a reasonable doubt because it's a constitutional error? I'm not sure whether the lower court applied a Chapman standard here. And I think ultimately, the potential difference in standards wouldn't have affected the analysis because the Court concluded that there was – that there was sufficient evidence on the proper quid pro quo theory, also evidence that would have supported a bribery theory. And so the Court just couldn't tell either way on what ground the jury would have possibly grounded this verdict. Ultimately, though, I think in light of that error, the appropriate result is the ordinary remedy here, a retrial. Petitioners are only entitled to avoid that remedy if they can carry their burden, and it's a stringent one, of showing that the jury actually resolved issues in their favor in this litigation. They haven't carried that burden here. They seek to be excused from it based on the legal error, but they haven't actually carried the error – carried the burden of showing that that jury that returned those inconsistent verdicts necessarily thought they were not guilty of committing quid pro quo bribery. And unless the Court has further questions, we respectfully ask that you affirm the judgment of the First Circuit. Roberts. Roberts. Thank you, counsel. Ms. Blatt, you have five minutes remaining. Blatt. Thank you, Mr. Chief Justice. Justice Alito, any instructional error that allows a jury to convict on something that's not a crime, it violates the Due Process Clause. But not all instructional errors violate the Due Process Clause. I wouldn't want to be convicted for something that wasn't a crime, so I don't – that doesn't surprise me. I'm going to start sort of backwards. Justice Ginsburg, on your question about an all-white jury where blacks are excluded, I'd go back and look at the transcript, because she said, oh, well, that might resolve the inconsistency. And there's a real discomfort that she had there, because she didn't want to say, well, they acquitted him of murder, but because they also convicted him of murder, maybe it was because they were – they were all white. It's – it's – it's the same argument here. She's saying, well, maybe that did cause the – the inconsistency. And it's our same argument, too. Nobody knows if the inconsistency is because they were irreconcilably divided on whether he was not guilty of a crime or maybe it was purely a result of the instructional error. And it's because Yeager said it's impossible. We could never meet that burden, and neither could that – the poor African-American, her example. He could never show that burden either, which is why the burden should be on us. Justice Kagan, you're a bit about unseemliness. I'll take unseemliness. Every single government brief on don't you dare reverse a conviction, convictions are final. They bring closure to our community unless – unless the error is so foul that it makes our country not have fairness and integrity in our criminal justice system. You just – we can't – we can't have any confidence in the verdict. That is the whole supposition behind the prejudicial error doctrine, is we take a jury's decision as sacrosanct unless it just – it's that bad. And that's the – that's the premise of your structural error doctrine. So unseemliness is written into your structural error, your prejudicial error, your plain error. It's written into all of your case law and the criminal law. On the third point about civil, I think it's fascinating. There are no cases. The government doesn't cite any. The 2009 brief in Yeager is identical to this brief. There are no civil cases where saying you have two inconsistent verdicts, but one is invalidated, and then somehow that cancels it out. There's no settled common law of if you have something invalid, you still get to look at it. In fact, the law – and, of course, we're going to defer to Justice Ginsburg, but the law has always been an invalid conviction just disappears for collateral estoppel. The other point I want to make, there was a lot of talking about, well, juries are just lean, lenity, and they're just being nice. But we know since Powell that overlapping charges skyrockets the conviction rate. With each additional charge, a conviction rate starts out at 68 percent, and it jumps to 88 percent. So the opposite is true in reality, is the more charges the government brings, the more likely there is a conviction. Ginsburg. The jury might have taken care of that in this case. The jury might have reacted to the overcharging by saying we're not – we will convict on the predicate offense, that we're not going to convict on these compound offenses. Right. But I just – that's not a basis to dismiss the otherwise collateral estoppel effect under Ashe. I mean, the question is, is are we going to count illegal invalid verdicts as relevant evidence of inconsistency? And almost the entirety of the government's argument, at least the last ten minutes, were just complete verbatim recounts of the oral argument in Yeager and the brief in Yeager, is that we have to have one free chance. The defendant didn't meet her burden. After all, collateral estoppel, you've got to meet your burden. There was no way you could reconcile the verdicts. The jury obviously didn't follow the law, and you should presume they followed the law. If they followed the law, they had to acquit. It was just – this is definitely a broken record. And, yes, they have a formalistic distinction that there is no jury decision. But it's worse when what you have is a jury decision that's on its face is offensive to our legal system. On the historical record, the only thing they came up with – I don't know how many – 30,000 volumes – was just two cases on the lower courts. But the majority – the cases they were talking about are more for civil. You can't get civil damages if there was an illegal conviction. It disputes probable cause and the courts are split. But this Court, and this Court's been around for a while, and I think it counts more than the two lower court decisions they have, have said it is impeached full stop. It's void ab initio. It's not – it's a legal fiction for a reason. It's not something that prosecutors get to dig up from the grave and visit from time to time, even though it was invalid. It's cremated. It's gone. And, again, it is something astonishing to say, well, we're going to treat it, even though it's unconstitutional under the Due Process Clause, it's a legal nullity under the Double Jeopardy Clause. And even though we're not letting the government use it to prove our conviction, I mean, our guilt or innocence, it's just that if we otherwise had a double jeopardy right because we were found not guilty, they can negate it and take it away. Alito, are you really arguing that it can't be used to prove a historical fact, that it's not a relevant – cannot be a relevant historical fact? In the same way that Yeager, the relevant historical fact is a finding of guilt. That's why they couldn't get through their brief without finishing up with historical fact on what the jury thought about the defendant's guilt. And I notice she didn't once say illegal conviction. If she had to give her argument saying the jury illegally convicted, it was an invalid verdict. It was an unconstitutional verdict. Her argument doesn't sound so attractive. Roberts. Thank you, counsel. The case is submitted.